EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Martínez Sanabria<br><br>Recurrido<br><br>v.<br><br>Departamento de Asuntos del Consumidor<br><br>Recurrente | Certiorari<br><br>2004 TSPR 210<br><br>163 DPR _____ |

Número del Caso: CC-2003-610

Fecha: 30 de diciembre de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional VI

Juez Ponente:

Hon. Carmen A. Pesante Martínez

Abogado de la Parte Peticionaria:

Lcdo. José A. Maisonet Trinidad

Abogada de la Parte Recurrida:

Lcda. Blanca G. Trinidad Torres

Materia: Infracciones Núm. L-146-2003-17890-6

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Luis Martínez Sanabria

    Recurrido

    v.                          CC-2003-610

Departamento de Asuntos
del Consumidor

    Recurrente


Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton


San Juan, Puerto Rico a 30 de diciembre de 2004.

Nos corresponde resolver si el Departamento de Asuntos del Consumidor puede imponer una multa administrativa a un contratista por no haber renovado éste su inscripción en el Registro de Contratista (creado en virtud de la Ley Núm. 146 del 10 de agosto de 1995) a pesar de continuar ejerciendo como tal.

I.

El Departamento de Asuntos del Consumidor (en adelante DACO) le cursó al Sr. Luis Martínez Sanabria (en adelante señor Martínez Sanabria) una "NOTIFICACIÓN DE AVISO DE INFRACCIÓN" en la

que se le advirtió que estaba fungiendo como contratista sin renovar su inscripción en el Registro de Contratista. Tal conducta, informó DACO, era violatoria de la Ley Núm. 5 del 23 de abril de 1973,[1] 3 LPRA sec. 341 *et seq.* (en adelante Ley Núm. 5), la Ley Núm. 146 del 10 de agosto de 1995,[2] 3 LPRA sec. 1020a *et seq.* (en adelante Ley Núm. 146) y el Art. V del Reglamento para Registro de Contratista[3] y como tal conllevaba la imposición de una multa administrativa de mil dólares ($1,000.00). En la notificación se le informaba al señor Martínez Sanabria que si el infractor consideraba no haber incurrido en la infracción o si no estaba conforme con la cuantía de la multa impuesta podía solicitar una vista administrativa dentro de determinado plazo y que, cumplido éste, empezaría a discurrir otro término para pagar la multa.

Transcurrido un tiempo sin que el señor Martínez Sanabria pagara o se comunicara con la agencia, DACO emitió una resolución imponiendo el pago de la multa

---

[1] También conocida como "Ley Orgánica del Departamento de Asuntos del Consumidor".

[2] Mediante esta ley se creó el Registro de Contratista, que se puso bajo la administración de DACO, y se ordenó a todos los contratistas a inscribirse en él.

[3] Reglamento para el Registro de Contratista del Departamento de Asuntos del Consumidor, Reglamento 5496 del 21 de octubre de 1996. El Art. V dispone, en lo pertinente, que: "El contratista pagará la suma de $100.00 por la inscripción y una suma similar por la renovación anual de la inscripción".

administrativa de mil dólares ($1,000.00) por no haber renovado la inscripción en el Registro de Contratista.

Inconforme, el señor Martínez Sanabria solicitó revisión al Tribunal de Apelaciones. Alegó, en síntesis, que la multa era improcedente por no tener autorización DACO para penalizar la falta de renovación o renovación tardía de la inscripción en el Registro de Contratista. Atendidos los planteamientos de las partes, el Tribunal de Apelaciones revocó la resolución emitida por DACO. Fundamentó su decisión en que la Ley Núm. 146 no facultó a DACO para imponer una penalidad por la falta de renovación o renovación tardía de la inscripción en el Registro de Contratista.

De esa sentencia recurre ante nos DACO. Plantea que erró el Tribunal de Apelaciones al señalar que no tiene autoridad para imponer una multa por la falta de renovación de la inscripción en el Registro de Contratista. Acordamos expedir y ambas partes comparecieron. Por entender que la Ley Núm. 146 autoriza la imposición de una multa administrativa por no renovar la inscripción en el referido registro, revocamos.

## II.

El Departamento de Asuntos del Consumidor es un organismo con diversos poderes que tiene como uno de sus propósitos fundamentales el vindicar e implementar los derechos de los consumidores. *Véase* Ley Núm. 5, 3 LPRA sec.

341e y 341b. Al delegarle a DACO la tarea de fiscalizar el mercado de bienes y servicios, la Asamblea Legislativa utilizó un lenguaje amplio que de tiempo en tiempo particulariza mediante la promulgación de otras leyes. En éstas se le encomienda específicamente a dicha agencia la protección de los intereses de los consumidores en determinado bien o servicio.

En 1995, la Asamblea Legislativa, preocupada por las dificultades que enfrentaban los consumidores al intentar que los contratistas corrigiesen defectos de construcción en sus recién adquiridos hogares, aprobó la Ley Núm. 146.[4] Dicha ley creó el Registro de Contratista, cuya administración se le confirió a DACO, y facultó a este último para requerir una fianza[5] por parte de los contratistas. Aunque más bien escueta, la ley ordenó a los contratistas a inscribirse en un registro público, en el que se harían constar las determinaciones finales que hiciera DACO en las querellas contra ellos, 23 LPRA sec. 1020b; proveyó un esquema para el cobro de la fianza a base

---

[4] Exposición de Motivos de la Ley Núm. 146 de 1995, *supra*, Leyes de Puerto Rico a la pág. 800.

[5] El propósito de la fianza es uno reparador, proveyéndole a los consumidores una fuente de la que potencialmente podrían cobrar todo o parte del monto de la deuda en que incurriría un contratista al incumplir o llevar a cabo una obra defectuosa. A esos efectos, el Reglamento para Registro de Contratista, *supra*, dispone en su Art. VI, en lo pertinente, que: "Tan pronto se radique querella por un consumidor en relación a defectos de construcción o incumplimiento en la terminación de la obra, la fianza depositada quedará sujeta a los resultados de esa querella y se interrumpirá el período de vencimiento de la misma".

del volumen de negocios del contratista en el año anterior, **volumen que el contratista debe certificar en su solicitud de inscripción o de renovación anual,** 23 LPRA sec. 1020c; dispuso que DACO debía emitir certificaciones a los contratistas debidamente inscritos, 23 LPRA sec. 1020e-1; y facultó a DACO para promulgar los reglamentos necesarios para el cumplimiento de la ley, 23 LPRA sec. 1020d, entre otras disposiciones.

En particular, el Art. 2 de la Ley Núm. 146, 23 LPRA sec. 1020b, ordenó la inscripción de todo contratista[6] en el Registro de Contratista. **Por su parte, el Art. 5, 23 LPRA sec. 1020e, dispuso que toda persona natural o jurídica a la que le fuera aplicable el Art. 2 y que no cumpliera con las disposiciones de la ley podría ser procesada por incurrir en delito menos grave, o, a discreción del Secretario, podría imponérsele una multa de no más de cinco mil dólares ($5,000.00).**[7]

---

[6] La Ley Núm. 242 del 15 de agosto de 1999 añadió como art. 1(a) de la Ley Núm 146 la siguiente definición del término contratista:

> Significa una persona natural o jurídica que somete una propuesta u oferta de construcción, administra, dirige o en cualquier otra forma directa o indirecta, asume la dirección de una obra de construcción, según definida en este capítulo, o que se anuncia como tal. Este término incluye también a los subcontratistas o cualquier contratista especializado y a toda persona que se dedique a la industria de la construcción. 23 LPRA sec. 1020a-1.

[7] "Toda persona natural o jurídica a quien le sea aplicable lo dispuesto en la sec. 1020b de este Capítulo precedente y que no cumpla con las disposiciones de este Capítulo, incurrirá en delito menos grave, y convicta que fuere, será penalizada con

De lo anterior se desprende que la Ley Núm. 146 ordena la inscripción inicial de todos los contratistas e impone una multa a las personas que incumplan con las disposiciones de la ley; no sólo con el deber de inscribirse, sino con cualquier disposición incluida en ésta. Además, la propia ley hace referencia a la renovación anual de la inscripción, aunque no la impone expresamente como una obligación. No obstante, la renovación de la inscripción se ata al concepto medular de la fianza del contratista. **Así, para mantener una fianza vigente y de una cantidad que resulte proporcional al negocio del contratista, no basta con prestar fianza una vez y continuar usando esa cantidad como el monto requerido en años subsiguientes; el legislador exigió que, una vez inscrito y luego de pagar su fianza una primera vez, cada año el contratista certifique su volumen de negocio en una renovación anual de su inscripción y pague una nueva fianza de acuerdo a tal monto.**

En vista del interés de la Asamblea Legislativa en que DACO se asegurara que la fianza fuese pagada anualmente y que dicha fianza fuese fiel reflejo del volumen de trabajo del contratista, entendemos que la intención

---

multa que no excederá de quinientos (500) dólares o pena de restitución, o ambas penas a discreción del Tribunal. **El Secretario del Departamento de Asuntos del Consumidor podrá optar por imponer una multa administrativa en lugar de presentar una querella criminal, en cuyo caso la multa no podrá exceder de cinco mil (5,000) dólares por cada día en que se incurra en violación a este Capítulo.**" (Énfasis suplido)

legislativa fue exigir no sólo una inscripción inicial, sino también una renovación periódica de dicha inscripción. El propio legislador dispuso el término para llevar a cabo esa renovación periódica, refiriéndose a la **"solicitud ... de renovación de la inscripción anual"**. 23 LPRA sec. 1020c (énfasis suplido). Debe recordarse que la labor de un tribunal al interpretar una ley es atender a los propósitos de la Asamblea Legislativa; el ejercicio interpretativo debe ser tal que asegure el resultado que originalmente se quiso obtener. Vázquez v. ARPE, 128 DPR 513, 523 (1991). Ante la opción entre una interpretación literal de la ley que conduzca a resultados absurdos y una interpretación razonable que sea consistente con el propósito legislativo, se debe preferir la última. Rodríguez Rosado v. Syntex, 2003 TSPR 145, res. 30 de septiembre de 2003.

Al ser la renovación anual de la inscripción una obligación que surge de la propia Ley Núm. 146, la falta de renovación constituiría una violación a las disposiciones de dicha ley, activándose así la autorización que ésta le confiere a DACO para que imponga una multa administrativa de no más de cinco mil dólares ($5,000.00) por cualquier violación "a las disposiciones de este capítulo". 23 LPRA sec. 1020e.

Ahora bien, aun cuando pudiera argumentarse lo contrario, la facultad de las agencias de imponer multas administrativas --que ha sido delegada por la Asamblea

Legislativa y avalada por nuestra jurisprudencia--[8] no debe confundirse con la imposición de multas u otras sanciones como resultado de un proceso criminal. El procedimiento y consecuencias de la imposición de una multa administrativa difieren considerablemente del procesamiento criminal de una persona que culmina con una pena de pagar cierta cantidad de dinero.

De entrada, hay que aclarar que las garantías constitucionales y estatutarias que caracterizan al procedimiento criminal no son de aplicación en los procedimientos de imposición de multas administrativas. A modo de ilustración, conviene hacer referencia a la jurisprudencia federal, que se ha visto precisada a desarrollar una serie de criterios para analizar la naturaleza civil o criminal de las sanciones. De este modo,

---

[8]La delegación hecha por la Asamblea Legislativa se ha canalizado en varias disposiciones legales. Así, en el Art. 18 de la Ley Núm. 5 se expresó que el Secretario de DACO tiene la facultad de imponer multas de hasta diez mil (10,000) dólares por violaciones a la Ley Núm. 5, a las otras leyes que administra el Departamento o a los reglamentos u órdenes emitidos por éste. 32 LPRA sec. 341q. Con aplicación aún más amplia, en la Sec. 7.2 de la Ley de Procedimiento Administrativo Uniforme se dispone que toda violación a las leyes o reglamentos administrados por las agencias puede ser penalizada con multa administrativa. Ello es así aun cuando la ley especial de la que se trate sólo provea penalidades criminales, puesto que en ese caso el jefe de la agencia, al amparo de la propia sec. 7.2, podrá optar por procesar el caso por la vía administrativa. 3 LPRA sec. 2201.

Sobre la jurisprudencia que trata la amplia delegación hecha a las agencias administrativas en materia de multas administrativas, *véanse*, Hernández Denton v. Quiñones Desidier, 102 DPR 218, 222 (1974), Pérez Colón v. Cooperativa de Cafeteros, 103 DPR 555, 557 (1975), Assoc. Ins. Agencies, Inc., 144 DPR 425, 441 (1997), Oficina de Ética Gubernamental v. Román, res. 1 de mayo de 2003, 2003 TSPR 70.

en la esfera federal se han distinguido las situaciones en que es necesario conferir las protecciones de la Quinta, Sexta y Octava Enmiendas de la Constitución de Estados Unidos de aquéllas en que no lo es.[9]

Así, en Kennedy v. Mendoza Martínez, 372 U.S. 144 (1963), el Tribunal usó, como guía para determinar la verdadera naturaleza de una sanción particular, ciertos factores que tradicionalmente se habían usado para distinguir las leyes penales de aquéllas que meramente

---

[9] Ya para el 1938, en Helvering v Mitchell, 303 U.S. 391, el Tribunal Supremo de Estados Unidos decidió, para efectos de la protección constitucional contra la doble exposición, que la imposición de un impuesto especial de cincuenta porciento (50%) sobre una deficiencia contributiva no constituía un castigo penal. Tras hacer un análisis de la ley en cuestión, el Tribunal Supremo encontró que el impuesto de cincuenta porciento se había configurado como una sanción civil, ello en virtud de que el procedimiento que se había dispuesto para ésta era uno eminentemente civil y que la propia ley contenía, en otra sección, una sanción criminal. Así, a la pág. 402, el Tribunal expresó:

> That Congress provided a distinctly civil procedure for the collection of the additional 50 per centum indicates clearly that it intended a civil, not a criminal, sanction. Civil procedure is incompatible with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions, and where civil procedure is prescribed for the enforcement of remedial sanctions, those rules and guaranties do not apply. Thus the determination of the facts upon which liability is based may be by an administrative agency instead of a jury, or if the prescribed proceeding is in the form of a civil suit, a veredict may be directed against the defendant; there is no burden upon the Government to prove its case beyond a reasonable doubt, and it may appeal from an adverse decision; furthermore, the defendant has no constitutional right to be confronted with the witnesses against him, or to refuse to testify; and finally, in the civil enforcement of a remedial sanction there can be no double jeopardy.

proveen esquemas reglamentarios. A esos efectos, consideró si la sanción: (1) conllevaba una incapacidad o restricción, (2) si históricamente se había considerado como un castigo, (3) si su aplicación entraba en juego solamente con demostrar que el individuo sancionado había actuado con conocimiento de que obraba de forma culpable, (4) si su aplicación promovería las metas tradicionales del castigo, la retribución y la disuasión, (5) si el comportamiento al que aplicaba ya estaba tipificado como delito, (6) si se le podía asignar un propósito alterno al que racionalmente pudiese estar relacionado, y, (7) si era excesiva con relación a ese propósito alterno.[10]

Recientemente, en Hudson v. U.S., 522 U.S. 93 (1997), y en el contexto de la protección constitucional contra la doble exposición, el Tribunal expresó, sin embargo, que la determinación de si una sanción era civil o criminal dependía, inicialmente, de una interpretación de la ley que la impone. **Estableció que para ello era necesario preguntarse si el Congreso expresa o implícitamente había indicado su intención de establecer una sanción civil o**

---

[10] En Kennedy, *supra*, el Tribunal tenía ante su consideración si era constitucional cierta legislación que permitía despojar de su ciudadanía a un ciudadano que se hubiese ido o hubiese permanecido fuera del país en tiempos de guerra para evadir el servicio militar obligatorio. Aunque no se había dispuesto expresamente que esa sanción fuese criminal, el Tribunal, tras considerar la ley en su totalidad y su historial legislativo, y luego de ponderar los factores mencionados arriba, determinó que la penalidad era criminal. Dicha determinación condujo a una declaración de inconstitucionalidad, puesto que la ley que contenía la sanción no proveía las salvaguardas necesarias en un procedimiento criminal.

**criminal.** Luego de esto había que examinar si aun cuando la intención era establecer una sanción civil, el esquema provisto era tan punitivo en su propósito o en su efecto como para convertirla de civil a penal. Ese examen del esquema legislativo se hizo a la luz de los siete factores de Kennedy v. Mendoza Martínez, *supra*. **Así, el Tribunal determinó que sólo se considerará una sanción como criminal en vez de civil cuando, tras analizar la ley de su faz en relación con esos siete factores, surge prueba clara de que el propósito u efecto de la disposición legal es tan punitivo que amerita obviar la intención legislativa.** Debe señalarse que el Tribunal aclaró que ninguno de los siete factores, por sí solo, era suficiente para convertir una sanción civil en una criminal.[11]

---

[11] En Hudson, *supra*, dos individuos que trabajaban en la industria de la banca habían sido multados y suspendidos de sus profesiones tras un procedimiento administrativo. Posteriormente se les radicaron cargos criminales. Los acusados plantearon que se les estaba violando su protección contra la doble exposición puesto que ya se les había impuesto una sanción criminal con relación a esa misma conducta. Al examinar la ley en cuestión, el Tribunal determinó que la intención legislativa era proveer las multas y la suspensión como una sanción civil y no criminal y que no existía la prueba clara necesaria para dejar de lado la intención del Congreso y declarar que la penalidad era criminal. Usó como guía los siete factores de Kennedy v. Mendoza Martínez, *supra*, y los aplicó a los hechos del caso. Expresó que ni las multas dinerarias ni la suspensión conllevaban una restricción o incapacidad afirmativa como lo es el encarcelamiento, ni se les había percibido tradicionalmente como castigos criminales, ni es necesario para su imposición considerar el estado mental del individuo a ser sancionado. Aclaró que aunque la conducta que daba lugar a la multa y la suspensión también podía dar lugar a una querella criminal, eso de por sí no era suficiente para considerar esas sanciones criminales. También tomó en cuenta que la multa y la suspensión tenían un efecto disuasivo en cuanto a la conducta proscrita, pero tampoco eso persuadió

Al igual que en la esfera federal, entendemos que la determinación de si una multa o sanción es civil o criminal depende, en primera instancia, de la intención legislativa que se encuentre plasmada expresa o implícitamente en la ley que provee para la sanción. Es a la Asamblea Legislativa a la que le corresponde determinar si cierta conducta es sancionable por la vía criminal o civil o por ambas. Como norma general, esa intención legislativa no debe ser subvertida.

Tras examinar las disposiciones de la Ley Núm. 146, estamos convencidos que el legislador fue claro en su intención de establecer una sanción civil como alternativa a la penalidad criminal. Además, y con relación a los siete factores esbozados en la jurisprudencia federal, entendemos que la imposición de una multa como la que está en controversia aquí no constituye lo que tradicionalmente se ha percibido como un castigo, ni impone una restricción o incapacidad, ni requiere considerar si la infracción se hace con conocimiento de la culpabilidad. Además, existe un propósito diferente al castigo criminal al que la multa está racionalmente relacionada: fomentar el bienestar y la confianza de los consumidores en los servicios provistos por los contratistas mediante el mantenimiento de un Registro de Contratista confiable y completo. La multa no resulta excesiva en relación con ese propósito alterno. De

al Tribunal de que se estaba ante una sanción criminal y no civil.

otra parte, aunque la conducta sancionada con la multa administrativa podría dar lugar a una querella criminal, ello de por sí no es suficiente como para ignorar la clara intención legislativa de establecer una sanción civil. Por último, aun cuando una multa como ésta tenga un efecto disuasivo con relación al incumplimiento con las disposiciones de la Ley Núm. 146, ello es cierto de prácticamente cualquier sanción civil. Determinar que por ese solo hecho una sanción se convierte de civil en criminal sería anular toda posibilidad de sancionar civilmente.

Si la intención legislativa es establecer una sanción civil y no existe prueba contundente que nos mueva a considerar que la multa, a pesar de haber sido catalogada como civil, constituye realmente un castigo criminal que no puede imponerse sin las garantías correspondientes al proceso criminal, dejaremos inalterada la naturaleza de la multa impuesta. Por ello, cuando estemos ante una sanción civil, como lo es una multa administrativa, no es necesario aplicar la normativa constitucional ni estatutaria del derecho penal.[12]   Resolver lo contrario implicaría dejar a

---

[12] Ello no significa, por supuesto, que los procedimientos administrativos, incluyendo aquellos que culminan con la imposición de una multa administrativa, se pueden llevar a cabo arbitrariamente o al margen del debido procedimiento de ley.   El asunto es que por no estar ante un procedimiento criminal, no es necesario proveer todas las protecciones especialmente conferidas a ese tipo de procedimiento. Helvering, *supra*.

las agencias administrativas desprovistas de una importante facultad  que les permite hacer valer los poderes que la Asamblea Legislativa les ha delegado.

A la luz del derecho antes expuesto, analicemos los hechos del caso.

### III.

No está en controversia que el señor Martínez Sanabria es un contratista al que le aplica la Ley Núm. 146. De hecho, se inscribió una primera vez en el Registro de Contratista. No obstante, llegado el momento de llevar a cabo su renovación anual de la inscripción y a pesar de que seguía fungiendo como contratista, el señor Martínez Sanabria no renovó la misma.  Por esa razón DACO le impuso una multa de mil dólares ($1,000.00).

Habida cuenta de que la Ley Núm. 146 obliga a inscribirse y renovar la inscripción en el Registro de Contratista y que la misma ley también autoriza a DACO a imponer multas por el incumplimiento con sus disposiciones, fue conforme a derecho, y además razonable, la actuación de DACO de imponerle una multa al señor Martínez Sanabria por operar como contratista sin renovar su inscripción. Además, dicha actuación promueve el propósito legislativo de asegurar que todo contratista preste anualmente una fianza cuya cuantía refleje el volumen de negocio que haya tenido el contratista en el año anterior.

En este caso, sin embargo, no está en controversia que la agencia proveyó la notificación y advertencias necesarias y que el procedimiento se llevó a cabo de una manera adecuada.

A tenor con todo lo anterior, concluimos que no fue *ultra vires* la actuación de DACO de multar al señor Martínez Sanabria. Cabe recordar que los tribunales deben ser deferentes a las interpretaciones que hagan las agencias de las leyes que les corresponde implementar. Associated Insurance v. Comisionado, 144 DPR 425, 436 (1997). Para ameritar esa deferencia no es esencial que la interpretación de la agencia sea la única posible; basta con que sea una razonable y compatible con el propósito legislativo. Vázquez v. ARPE, *supra*, a la pág. 524.

IV.

Por los fundamentos expuestos en la Opinión que antecede, se revoca el dictamen emitido por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Martínez Sanabria

    Recurrido

    v.                                    CC-2003-610

Departamento de Asuntos
del Consumidor

    Recurrente

SENTENCIA

San Juan, Puerto Rico a 30 de diciembre de 2004

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca el dictamen emitido por el Tribunal de Apelaciones.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente.

                     Aida Ileana Oquendo Graulau
                     Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Martínez Sanabria

    Recurrido

        vs.                              CC-2003-610        Certiorari

Departamento de Asuntos del
Consumidor

    Recurrente

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 30 de diciembre de 2004.

En el caso de autos, la mayoría convalida una multa administrativa impuesta por el Departamento de Asuntos al Consumidor (DACO) a un contratista, por éste no haber renovado su inscripción en el Registro de Contratistas que la agencia mantiene.

La mayoría del Tribunal decreta su dictamen a pesar de que admite en su opinión que la ley que establece el Registro de Contratistas referido **no impone expresamente la renovación anual de la inscripción en cuestión como una obligación**. La mayoría justifica su decreto señalando que **"no es esencial que la interpretación de la agencia sea la**

**única posible; basta con que sea una razonable y compatible con el propósito legislativo**".

Para convalidar la multa en cuestión, la mayoría del Tribunal concluye, luego del correspondiente análisis jurídico, que el legislador tuvo la intención de que contratistas como el del caso de autos renovaran periódicamente la inscripción que aquí nos concierne. Llega a tal conclusión mediante una trabajosa interpretación estatutaria **basada en la interpolación de diversas disposiciones de una ley**, ninguna de las cuales establece por sí misma la obligación de renovar en cuestión. Tal proceder permite suponer que para el contratista conocer a cabalidad el supuesto deber de renovar la inscripción, también debía ser abogado.

Es decir, parece injusto que se sancione a una persona ordinaria, que no es abogado, por no cumplir con una exigencia que no constaba de ningún modo claro. Las más elementales nociones del **debido proceso de ley** requieren que para que pueda imponerse una penalidad administrativa a alguna persona por una omisión suya, dicha persona debe haber estado debidamente notificada antes de la exigencia por cuya omisión se le penaliza. Es menester que la persona sancionada haya estado adecuadamente informada sobre cual era su obligación. Es una norma fundamental, harto conocida, que el debido proceso de ley exige que los estatutos y reglamentos le den a la persona de inteligencia ordinaria una oportunidad razonable de conocer qué es lo que prescriben. Grayned v. City of Rockford, 408 US 104, 108 (1972); Upton v. SEC, 75 F.3d 92 (1996); US v. Matthews, 787 F.2d 38, 49 (1986). Este principio es de aplicación siempre, sin que importe si las sanciones a aplicarse son de naturaleza civil o criminal. Village of Hoffman Estates v. Flipside, 455 US 489, 498-99

(1982). La ley que aquí nos concierne no establecía de tal modo claro que la ausencia de renovación de la inscripción en cuestión constituía conducta sancionable. Por ello, no procedía la multa impuesta por DACO en este caso. El foro apelativo resolvió correctamente al dejar sin efecto dicha multa.

La mayoría del Tribunal dedica la mayor parte de su opinión a explicar la legitimidad de la facultad de imponer multas de los organismos administrativos y la diferencia de tales multas con respecto a las sanciones penales. **Pero resulta que tales explicaciones nada tienen que ver con la cuestión realmente pertinente aquí**. A estas alturas nadie disputa la facultad de los organismos administrativos para imponer multas, cuando ésta ha sido debidamente instituida por ley. El asunto en cuestión, más bien, es **si una agencia puede sancionar a alguna persona por violar una norma que ésta no conocía, porque dicha norma no se había formulado expresamente o de algún modo claro y fehaciente**. Esta es la cuestión realmente acuciosa, relativa al debido proceso de ley, que la mayoría del Tribunal, ni menciona en su discusión sobre el derecho administrativo. Por no atender dicha cuestión, la mayoría del Tribunal termina convalidando la imposición de una multa, a contrapelo de lo que requiere el debido proceso de ley y en detrimento de la parte recurrida. Por ello, yo DISIENTO.


                                        JAIME B. FUSTER BERLINGERI
                                        JUEZ ASOCIADO