El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
En el caso de epígrafe nos corresponde resolver si el Departamento de Asuntos del Consumidor tiene la autori-dad para realizar inspecciones en el recetario de una farmacia. De contestar dicha interrogante en la afirma-tiva, debemos determinar si la mencionada agencia puede imponer multas administrativas a tales establecimientos por encontrar medicamentos expirados en su recetario aun cuando una ley especial —la Ley de Farmacia de Puerto Rico— faculta al Departamento de Salud a regular todo lo relativo a la manufactura, distribución y venta de produc-tos farmacéuticos.
Por entender que la Ley Orgánica del Departamento de Asuntos del Consumidor confiere a dicha agencia el poder de fiscalizar el cumplimiento de las leyes sobre protección al consumidor que estén bajo la jurisdicción de otras agen-cias, concluimos que esta agencia tiene autoridad para ins-peccionar los recetarios en las farmacias. Sin embargo, en vista de que procede referir al Departamento de Salud las posibles infracciones para que dicha agencia tome la acción correspondiente, modificamos el dictamen recurrido.
*202 I
En septiembre de 2006, un investigador del Departa-mento de Asuntos del Consumidor (DACo) realizó una ins-pección de rutina en la Farmacia San Martín Barceloneta, Inc. (Farmacia San Martín). Al inspeccionar el recetario de la farmacia, dicho funcionario encontró varios medicamen-tos expirados que estaban preparados para despacho. En atención a ello, DACo emitió un Aviso de Infracción contra la Farmacia San Martín por violación a los Arts. 5 y 6 del Reglamento de Calidad y Seguridad, Productos de Uso y Consumo, Reglamento Núm. 3667 de 6 de octubre de 1988 (Reglamento de Calidad y Seguridad). En el aviso, la agen-cia notificó a la farmacia la imposición de una multa admi-nistrativa por $3,000.
Así las cosas, la Farmacia San Martín presentó un es-crito ante DACo, mediante el cual solicitó una vista admi-nistrativa y el archivo de la infracción. Alegó que los ins-pectores de dicha agencia carecen de autoridad legal para inspeccionar los medicamentos que estén en el recetario y que se encuentren fuera del alcance del público. Además, adujo que ninguno de los medicamentos expirados estaba expuesto para la venta ni fue vendido a consumidor alguno. Finalmente, la Farmacia San Martín argüyó que la multa impuesta en su contra era ilegal, excesiva y confiscatoria.
Celebrada la vista administrativa, DACo emitió una re-solución en la cual determinó que la Farmacia San Martín violó el Art. 6(1) del Reglamento de Calidad y Seguridad por exponer para la venta productos farmacéuticos con la fecha de expiración vencida. Por ende, confirmó la imposi-ción de la referida multa administrativa de $3,000.
Insatisfecha, la Farmacia San Martín acudió al Tribunal de Apelaciones. Alegó, entre otras cosas, que DACo erró al intervenir en una actividad que está bajo la jurisdicción exclusiva del Departamento de Salud. El foro apelativo re- *203 vocó la resolución recurrida por entender que, en efecto, tanto la inspección del recetario como la imposición de la multa administrativa se habían realizado sin facultad en ley para ello. En esencia, el foro apelativo fundamentó su determinación de acuerdo con el principio de especialidad y la aplicación de la Ley Núm. 247 de 3 de septiembre de 2004 (Ley de Farmacia), 20 L.P.R.A. see. 407 et seq., y sus reglamentos, los cuales conceden al Departamento de Sa-lud ciertas facultades para regular e inspeccionar los me-dicamentos en los recetarios farmacéuticos.
Inconforme, DACo acude oportunamente a nosotros me-diante una petición de certiorari. Aduce que el Tribunal de Apelaciones erró al determinar que la facultad para ins-peccionar y regular los medicamentos farmacéuticos en un recetario corresponde exclusivamente al Departamento de Salud. Esto, pues alega que la referida Ley de Farmacia sólo establece ciertas normas generales para garantizar la sana operación de las farmacias y no dispone que la juris-dicción del Departamento de Salud en cuanto a los asuntos del recetario sea de naturaleza exclusiva.
Examinado el recurso, expedimos el auto solicitado. Con el beneficio de la comparecencia de ambas partes, procede-mos a resolver.
II
 Sabido es que en nuestro ordenamiento jurídico la ley orgánica de una agencia es el mecanismo legal me-diante el cual se le autoriza y se le delega los poderes ne-cesarios para que actúe conforme al propósito perseguido por el legislador con su creación. Amieiro González v. Pinnacle Real Estate, 173 D.P.R. 363 (2008); ASG v. Mun. San Juan, 168 D.P.R. 337 (2006); Caribe Comms., Inc. v. P.R.T.Co., 157 D.P.R. 203 (2002). Del mismo modo, hemos afirmado en reiteradas ocasiones que al interpretar el al-cance de los poderes delegados a una agencia administra- *204 tiva, no debemos limitar el análisis a una interpretación restrictiva de su estatuto habilitados ASG v. Mun. San Juan, supra; Lebrón v. El Comandante Oper. Co., Inc., 148 D.P.R. 298 (1999).
En este sentido, es preciso destacar que DACo tiene como fin primordial vindicar, proteger e implementar los derechos del consumidor. Art. 3 de la Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACo), 3 L.P.R.A. see. 341b; Amieiro González v. Pinnacle Real Estate, supra; Martínez v. Rosado, 165 D.P.R. 582 (2005); Martínez v. D.A.Co., 163 D.P.R. 594, 600 (2004). Véase, además, W. Vázquez Irizarry, Derecho Administrativo, 76 (Núm. 3) Rev. Jur. U.P.R. 715, 728 (2007). En armonía con lo anterior, el Art. 6 de la Ley Orgánica de DACo impuso al Secretario de dicha agencia el deber de promover y establecer normas de calidad, seguridad e idoneidad en los productos de uso y consumo. 3 L.P.R.A. sec. 341e(l).
Para requerir el cumplimiento de tales objetivos, la referida disposición también autoriza al Secretario de DACo a inspeccionar las instalaciones físicas y examinar las operaciones de las personas o entidades sujetas a las normas regulatorias que administra la mencionada agencia. 3 L.P.R.A. sec. 341e(w). Además, DACo está facultado para realizar toda clase de estudios e investigaciones sobre asuntos que afecten los intereses del consumidor. Asimismo, la Asamblea Legislativa delegó a dicha agencia el poder de aprobar las reglas y los reglamentos necesarios y razonables para proteger y vindicar los intereses del consumidor puertorriqueño. 3 L.P.R.A. sec. 341m.
De otra parte, es menester señalar que la ley habilitadora de DACo impone al Secretario de dicha agencia el deber ministerial de promover y velar por el cumplimiento de todas las leyes, las reglas, los reglamentos y las órdenes que afecten los intereses del consumidor, en coor- *205 dinación con las demás agencias y los departamentos del Estado Libre Asociado de Puerto Rico. 3 L.P.R.A. see. 341e(s). Asimismo, el mencionado funcionario también goza de la facultad legal para coordinar con las demás en-tidades públicas la canalización efectiva de la educación y orientación del consumidor en torno a los programas y las actividades de cada agencia. 3 L.P.R.A. sec. 341e(q).
Cónsono con la intención legislativa de fomentar la coordinación interagencial en beneficio de los derechos del consumidor, la referida disposición establece que el Secretario de DACo tiene la facultad de referir a los organismos, a las agencias o a los departamentos correspondientes aquellos asuntos y aquellas querellas que les corresponda atender bajo sus respectivas leyes. 3 L.P.R.A. sec. 341e(r). De hecho, el Art. 7 de la Ley Orgánica de DACo dispone expresamente que dicho funcionario
... tendrá poderes y facultades para, en protección de los consumidores, fiscalizar el cumplimiento de las leyes sobre protección al consumidor que estén bajo la jurisdicción de otras agencias y organismos del Estado Libre Asociado de Puerto Rico y referir a los mismos las querellas y notificar las infracciones para que éstos tomen la acción que proceda. (Én-fasis suplido.) 3 L.P.R.A. sec. 341f.
Es decir, la Asamblea Legislativa entendió necesario conceder al Secretario de DACo prerrogativas amplias para actuar en beneficio del consumidor puertorriqueño, incluso reconociéndole la autoridad para fiscalizar asuntos bajo la jurisdicción particular de otras agencias del Estado. A su vez, se deduce del historial legislativo de la referida ley orgánica que el propósito de este artículo era empode-rar al Secretario de DACo con una función fiscalizadora y facultarlo para fungir como procurador de los derechos del consumidor ante otras agencias o ante los propios tribuna-les del país. Véase Debate sobre el R del S. 508, Diario de *206 Sesiones de la Asamblea Legislativa (Cámara), 11 de abril de 1973, pág. 1086.(1)
No obstante, también surge de dicho historial que el texto del Art. 7, supra, que se presentó originalmente en el Senado contemplaba expresamente que el Secretario de DACo pudiese imponer multas administrativas por viola-ciones a las leyes bajo la jurisdicción de otras agencias.(2) Resulta relevante, pues, que este artículo fue enmendado y sustituido por un lenguaje que no hacía referencia alguna al poder adjudicativo del Secretario para imponer multas administrativas por violaciones a las leyes bajo la jurisdic-ción de otras agencias. Aunque se mantuvo inalterado el objetivo de otorgar al Secretario de DACo amplias faculta-des sobre asuntos que afecten al consumidor más allá de su propia jurisdicción, la mencionada enmienda se limitó a articular el poder de fiscalización que tiene dicho funciona-rio en cuanto a las leyes bajo la jurisdicción de otras agencias. Asimismo, se reiteró su facultad para referir las querellas y notificar las infracciones para que las entida-des públicas con jurisdicción tomen la acción que proceda. Véanse: R del S. 508 de 8 de marzo de 1973, Texto apro-bado en votación final por el Senado, 6 de abril de 1973, *207 7ma Asamblea Legislativa, Ira Sesión Ordinaria; Art. 7 de la Ley Orgánica de DACo, 3 L.P.R.A. sec. 341f.
Como se puede apreciar, dicha acción legislativa denotó la intención de facultar a DACo con poderes amplios para fiscalizar todo asunto que afecte al consumidor bajo la ju-risdicción de otras agencias del Gobierno. Sin embargo, el texto finalmente aprobado no contempla la facultad adju-dicativa del Secretario de DACo para imponer multas ad-ministrativas por infracciones a las leyes o a los reglamen-tos administrados específicamente por otras entidades públicas. Todo lo contrario, pues el legislador enmendó de-liberadamente el Art. 7 de la referida ley orgánica, supra, para suprimir la referencia a tal prerrogativa y especificar que el poder de dicho funcionario en ese contexto se limi-taba a fiscalizar, referir y notificar las infracciones a las leyes y a los reglamentos de las demás agencias del país. 3 L.P.R.A. sec. 341f.
En atención a este marco normativo, procedemos a de-limitar el ámbito jurisdiccional de DACo en este caso.
III
A. En virtud de los poderes delegados a DACo para proteger y vindicar los derechos del consumidor, el 30 de diciembre de 1988 dicha agencia aprobó el Reglamento de Control de Precios de Productos Medicinales, Reglamento Núm. 37 (Reglamento de Precios), mediante el cual se concedió al Secretario la autoridad de fijar los precios máximos de venta de productos medicinales en cuanto a los distribuidores primarios, droguerías y farmacias.(3) En lo pertinente al caso de autos, la See. 9 del referido reglamento impone al farmacéutico el deber de colocar en la etiqueta de todo producto medicinal que se despache el *208 nombre y la fecha de expiración del producto, así como el número del lote de procedencia, si el medicamento no es despachado en su envase original. Además, la Sec. 10 del Reglamento de Precios dispone que toda persona que se dedique a la venta de productos medicinales de receta pre-parará y mantendrá para el examen del Secretario todos los expedientes necesarios para demostrar los precios de venta de tales productos por el término de un año después de realizada la transacción. Por último, la Sec. 11 del refe-rido reglamento establece que las violaciones a las disposi-ciones antes descritas estarán sujetas a la imposición de sanciones administrativas.
Evidentemente, el Reglamento de Precios faculta a los funcionarios de DACo a inspeccionar el recetario de una farmacia para cumplir con su función de regular los precios de artículos de primera necesidad. Al referirse a una acti-vidad comercial que puede afectar los intereses del consu-midor, DACo tiene jurisdicción para revisar el historial de venta y fiscalizar la rotulación de los envases de medicamentos. Ello es cónsono con las amplias funciones investigativas que la Ley Orgánica de DACo reconoció al Secretario para vindicar los objetivos y propósitos de dicha agencia, dirigidos a establecer normas de calidad, seguri-dad e idoneidad en los productos de uso y consumo. 3 L.P.R.A. sec. 341m.
Ahora bien, y a pesar de que DACo claramente tiene la autoridad para realizar inspecciones en el recetario de una farmacia, no se desprende del Reglamento de Precios que dicha agencia pueda imponer multas administrativas por encontrar productos farmacéuticos expirados en tales recetarios. De hecho, al imponer las multas administrati-vas en el caso de autos, DACo invocó exclusivamente los Arts. 5 y 6 del Reglamento de Calidad y Seguridad, los cuales se refieren a la prohibición de vender productos de inferior calidad y productos expirados en general.
*209 Aunque tales disposiciones del Reglamento de Calidad y Seguridad conceden a DACo la autoridad de imponer mul-tas administrativas por la venta de un producto cuya fecha de expiración esté vencida, la Farmacia San Martín sos-tiene que ni la Ley Orgánica de DACo ni la reglamentación antes citada contienen disposición específica alguna diri-gida a fiscalizar las farmacias en su recetario. Más aún, aduce que al aprobar la Ley de Farmacia, la Asamblea Le-gislativa le asignó al Departamento de Salud la enco-mienda expresa y exclusiva de regular y fiscalizar tales asuntos, incluyendo el control sobre la venta de medica-mentos expirados. Por lo tanto, arguye que el referido es-tatuto reemplazó y desplazó todas las leyes anteriores que regulaban la materia, incluidas las disposiciones invocadas por DACo para imponer la multa administrativa en este caso.
Examinemos con más detenimiento el alcance de dicho estatuto y su reglamentación correspondiente.
B. La Ley de Farmacia fue promulgada por la Asamblea Legislativa en el 2004 con el fin cardinal de reglamentar el ejercicio de la profesión farmacéutica y la operación de farmacias en nuestra jurisdicción.(4) El Art. 1.02 de dicho estatuto, 20 L.P.R.A. see. 407 n., dispone que su objetivo es promover, preservar y proteger la salud, la seguridad y el bienestar públicos en el Estado Libre Asociado de Puerto Rico. Para lograr tales propósitos, la Ley de Farmacia contiene varias normas específicas relativas al licénciamiento, al control y a la reglamentación de la manufacturación, distribución y dispensación de medicamentos. Véase 20 L.P.R.A. see. 410.
En primer lugar, la Ley de Farmacia creó la Junta de Farmacia de Puerto Rico, como un organismo adscrito al *210 Departamento de Salud, con la responsabilidad de salva-guardar la salud del pueblo y con el poder exclusivo de reglamentar el ejercicio de la profesión de farmacia y la ocupación de técnico de farmacia en el país. 20 L.P.R.A. see. 408. Entre las prerrogativas conferidas a dicha depen-dencia se encuentra el deber de iniciar investigaciones o procedimientos administrativos contra un farmacéutico o técnico de farmacia que incurra en una violación a las le-yes o a los cánones de ética sobre la manufactura, distri-bución y dispensación de medicamentos, poniendo así en peligro la salud pública. 20 L.P.R.A. sec. 408a(k).(5)
De otra parte, el Art. 6.02(a) de la Ley de Farmacia, 20 L.P.R.A. sec. 411a(a), dispone que el Secretario de Salud será responsable de poner en vigor y fiscalizar el cumplimiento de las disposiciones de dicho estatuto y su reglamentación correspondiente. Así, pues, se le delegó el poder de investigar, inspeccionar, citar testigos y aprobar las reglas y los reglamentos necesarios para hacer viables los propósitos del estatuto. Con relación a ello, la referida ley también creó la División de Medicamentos y Farmacia, y autorizó al Secretario de Salud a delegarle las funciones de fiscalizar el cumplimiento de las disposiciones relacionadas con la manufactura, distribución y dispensación de medicamentos. 20 L.P.R.A. sec. 411b.
Dicha dependencia, adscrita a la Secretaría Auxiliar de Reglamentación y Acreditación de Facilidades de Salud, cuenta con un equipo de farmacéuticos inspectores que tie-nen la función de examinar e investigar expedientes, tran-sacciones y cualquier material o actividad que esté relacio-nada con la manufactura, distribución y dispensación de *211 medicamentos. Asimismo, estos inspectores pueden reco-ger las pruebas necesarias para el procesamiento de los violadores de la referida ley y sus reglamentos, de modo que sean procesados en el foro administrativo correspondiente. A su vez, el Secretario de Salud puede delegar a la División de Medicamentos y Farmacia la po-testad de decomisar o embargar todo medicamento que no esté apto para su consumo o que no cumpla con los crite-rios que impone la ley. 20 L.P.R.A. sec. 411b.(6) Por último, la referida Ley de Farmacia autoriza a la referida Junta y al Secretario a imponer multas administrativas hasta un máximo de $5,000 por cada violación a dicho estatuto o a sus reglamentos. 20 L.P.R.A. sec. 411f.
Al amparo del esquema regulatorio de farmacias ads-crito al Departamento de Salud, el 6 de noviembre de 1998 se promulgó el Reglamento para la Operación de Estable-cimientos Dedicados a la Manufactura, Producción, Venta y Distribución de Drogas y Productos Farmacéuticos (Re-glamento Núm. 91).(7) De forma análoga a la actual Ley de Farmacia, el Art. IV(Ñ) del Reglamento Núm. 91 dispone que los inspectores farmacéuticos son los funcionarios res-ponsables de inspeccionar los establecimientos que manu- *212 facturen, vendan y distribuyan medicamentos en Puerto Rico.
En lo pertinente al caso de autos, el Art. XV(E) del Re-glamento Núm. 91 establece una prohibición absoluta a la venta de medicamentos expirados y ordena que éstos sean puestos en cuarentena y separados físicamente de otras medicinas que se adquieran por receta hasta que sean des-truidos o devueltos a sus suplidores. Finalmente, se des-prende del mencionado esquema que cualquier infracción a estas reglas se penalizará con una multa de hasta $5,000 por cada violación.(8)
Expuesta la política pública que promueve tanto la Ley de Farmacia como la Ley Orgánica de DACo, y en atención a las facultades y los deberes que les fueron encomendados respectivamente a DACo y al Departamento de Salud, nos resta determinar cuál es la agencia administrativa que po-see jurisdicción sobre el caso ante nuestra consideración.
IV
A. Según el marco normativo antes expuesto, es evidente que varias disposiciones reglamentarias y facultades administrativas delegadas por ley aparentan incidir sobre el mismo asunto: la regulación de los medicamentos expirados en las farmacias del país. Por ende, para resolver el conflicto jurisdiccional en este caso debemos recurrir al principio general de hermenéutica que establece que una ley de carácter especial sobre una materia prevalece sobre otra de carácter general. Véanse: Art. 12 del Código Civil, 31 L.P.R.A. sec. 12; A.I.I. Co. v. San Miguel, 161 D.P.R. 589, 597-598 (2004). Este principio de especialidad se extiende al ámbito administrativo, pues hemos expre- *213 sado anteriormente que una ley “especial sobre [una] ma-teria ... debe prevalecer sobre cualquier otro precepto apli-cable que sea de carácter general”. (Enfasis suplido.) París v. Canety, 73 D.P.R. 403, 406 (1952). En ese contexto, el principio de especialidad se debe examinar desde una óp-tica comparativa de los poderes delegados a ambas agen-cias y sus respectivas funciones reguladoras y adjudicati-vas de la conducta en controversia. (9)
En vista de dicho principio, y ante los hechos particula-res de este caso, creemos que la Ley de Farmacia y su reglamentación correspondiente prevalecen sobre la Ley Orgánica de DACo y el Reglamento de Calidad y Seguridad promulgado a su amparo. En contraste con el esquema re-gulatorio general invocado por DACo en el presente re-curso, la Ley de Farmacia atiende de manera específica los asuntos relacionados a la manufactura, distribución y venta de medicamentos. 20 L.P.R.A. sec. 410. Además, dicho estatuto delega la regulación administrativa de tales asuntos al Secretario de Salud y a la División de Medica-mentos y Farmacia adscrita a dicha agencia de gobierno. 20 L.P.R.A. sec. 411.
De hecho, el andamiaje administrativo constituido en virtud de dicha ley regula y prohíbe expresamente la venta de medicamentos expirados. Art. XV(E) del Reglamento Núm. 91. Esta prohibición reglamentaria contrasta con las disposiciones invocadas por DACo —a saber, los Arts. 5 y 6 del Reglamento de Calidad y Seguridad, supra— para mul-tar a la Farmacia San Martín, pues éstas se refieren a la prohibición de venta de productos expirados en general. Al aprobar la Ley de Farmacia, el legislador reconoció que el Departamento de Salud —específicamente la División de *214 Medicamentos y Farmacia— tiene la pericia y el personal especializado para cumplir con tales propósitos regulatorios.
Más aún, existe un claro conflicto entre ambos regla-mentos que impide la aplicación de los poderes generales de DACo en este caso. Mientras que el Art. 6 del Regla-mento de Calidad y Seguridad permite, como excepción, la venta de productos expirados si se cumple con ciertos re-quisitos de rotulación que impone DACo,(10) el Reglamento Núm. 91 del Secretario de Salud establece una prohibición absoluta de la venta de medicamentos expirados. Dado que existe una evidente contradicción entre el reglamento general de DACo y el esquema administrativo especial esta-blecido al amparo de la Ley de Farmacia, es forzoso con-cluir que la jurisdicción adjudicativa del Secretario de Salud prevalece en el presente caso. Véase Córdova & Simonpietri v. Crown American, 112 D.P.R. 797, 800 (1982).
Según lo anterior, concluimos que la resolución adminis-trativa emitida por DACo, mediante la cual se le impuso a la Farmacia San Martín una multa de $3,000 por infringir el Reglamento de Calidad y Seguridad, no debe prevalecer. Dicha conclusión es inevitable, dado que la Ley de Farma-cia y el Reglamento Núm. 91 establecieron un ordena-miento especial, avalado expresamente por la Asamblea Legislativa, para regular todo lo relativo a la manufactura, distribución y venta de medicamentos, lo cual incluye la conducta en que supuestamente incurrió la Farmacia San Martín.
Además, se desprende de la normativa antes reseñada que el legislador delegó expresamente al Departamento de Salud y a la División de Farmacias y Medicamentos la fa- *215 cuitad especializada para regular y reglamentar la distri-bución y venta de medicamentos en las farmacias del país, con lo cual se desplazó la jurisdicción general de DACo sobre dicha actividad comercial. Por consiguiente, no erró el Tribunal de Apelaciones al declarar la nulidad de la multa, pues es evidente que DACo no posee facultad en ley para imponer ni ejecutar una sanción en las circunstancias particulares de este caso.
B. Ahora bien, cabe destacar que la Ley Orgánica de DACo no impide que dicha agencia tome ciertas medidas y acciones en beneficio del consumidor puertorriqueño con relación a las farmacias, arm en un supuesto como el del caso de autos. Según mencionamos anteriormente, DACo tiene jurisdicción para inspeccionar el recetario de las farmacias al amparo de los poderes delegados por la Ley Núm. 228 de 12 de mayo de 1942, según enmendada, 23 L.P.R.A. see. 734, y el Reglamento de Precios. Además, de dicho esquema regulatorio dimana el poder adjudicativo de DACo en cuanto al control de precios de artículos de primera necesidad, incluso los medicamentos de receta. Sin embargo, también surge de este análisis integrado que DACo no posee jurisdicción para regular los aspectos particulares y salubristas de la manufactura, distribución y venta de los medicamentos en el recetario más allá del asunto de los precios, pues la Ley de Farmacia desplazó el poder general de DACo en ese ámbito administrativo y lo sustituyó por un andamiaje especializado a cargo del Departamento de Salud.
En otras palabras, la regulación general y adjudicativa de DACo en cuanto a los productos expirados no aplica en el contexto de los medicamentos ubicados en el recetario. Esto dado que una agencia especializada —el Departa-mento de Salud— regula y adjudica la conducta en contro-versia por mandato expreso de la Asamblea Legislativa. La seguridad jurídica y el sentido común impiden cualquier otra conclusión, pues exponer una misma conducta a san- *216 dones múltiples y simultáneas sería contrario a la equidad y no fomentaría la interacción efectiva entre el andamiaje gubernamental y cualquier actividad comercial legítima.
A pesar de ello, es innegable que el esquema regulatorio instituido por la Ley de Farmacia y su reglamentación correspondiente persigue beneficiar la salud y la seguridad del consumidor puertorriqueño. Así, pues, nada impide que al amparo del Art. 7 de la Ley Orgánica de DACo, supra, el Secretario de dicha agencia fiscalice tales asuntos mediante inspecciones en el recetario de las farmacias. Además, en conformidad con dicho precepto, DACo puede referir la querella y notificar la infracción en controversia al Departamento de Salud, agencia con jurisdicción adjudicativa sobre los asuntos relacionados a la distribución y venta de los productos farmacéuticos en el país.
Es decir, en su función de procurador de los consumido-res al amparo de la referida disposición, el Secretario de DACo puede emitir el Aviso de Infracción y promover acti-vamente la querella correspondiente ante el Departamento de Salud. Mediante esta coordinación interagencial de es-fuerzos y facultades, ambas agencias pueden cumplir efec-tivamente con los propósitos de sus respectivas leyes habi-litadoras para así proteger la salud y la seguridad del consumidor puertorriqueño. Este curso de acción consti-tuye, precisamente, la intención del legislador al crear el Departamento de Asuntos del Consumidor, pues el Art. 7 de su ley habilitadora, supra, claramente permite al Secre-tario de DACo vindicar de esta manera los derechos del consumidor ante otras agencias de gobierno.
V
Por los fundamentos que anteceden, modificamos la sentencia dictada por el Tribunal de Apelaciones. Confir-mamos la determinación de dicho foro de declarar la nuli- *217 dad. de la multa administrativa impuesta contra la Farma-cia San Martín. No obstante, se ordena al Secretario de DACo cumplir con su deber ministerial en virtud del Art. 7 de la Ley Orgánica de DACo, 3 L.P.R.A. sec. 341f, de referir la infracción en controversia al Departamento de Salud para que dicha agencia tome la acción que proceda.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez disintió sin opinión escrita.

 Al discutir el alcance de este artículo en la sesión legislativa de la Cámara de Representantes, el representante José Izquierdo Stella aclaró que el poder delegado al Secretario del Departamento de Asuntos del Consumidor (DACo) en cuanto a los asuntos bajo la jurisdicción de otras agencias no era meramente de referir, sino que este funcionario “puede fiscalizar, puede llevar las personas a los tribunales y puede llevar a las personas para que se procesen. Tiene un tipo de función fiscalizadora, en cuanto a todas las leyes de acuerdo a como reza el Artículo 7, que creo se explica por sí solo”. Debate sobre el P. del S. 508, Diario de Sesiones de la Asamblea Legislativa (Cámara), 11 de abril de 1973, pág. 1086

 El Art. 7 del Proyecto del Senado 508 originalmente disponía lo siguiente:
“El Secretario tendrá poderes y facultades para, en protección de los consumi-dores, imponer aquellas multas administrativas y tomar aquellas acciones legales que dispongan las leyes especiales o generales administradas por las otras agencias u organismos del Estado Libre Asociado de Puerto Rico, cuando las disposiciones de dichas leyes hayan sido violadas en perjuicio de los consumidores.
“Las sanciones impuestas o solicitadas por el Secretario bajo [e]ste artículo se-rán las que establezcan las leyes en virtud de las cuales el Secretario ha tomado acción. Si dichas leyes no proveyeren sanciones de ningún tipo, el Secretario actuará a tenor con lo dispuesto en la presente ley.” (Énfasis suplido.) P. del S. 508 de 8 de marzo de 1973, 7ma Asamblea Legislativa, Ira Sesión Ordinaria.

 En el referido reglamento, DACo también invocó el poder de su Secretario para regular los medicamentos y otros artículos de primera necesidad al amparo de la Ley Núm. 228 de 12 de mayo de 1942, según enmendada, 23 L.P.R.A. sec. 734.

 Nótese que mediante el Art. 7.05(a) de dicha ley, 20 L.P.R.A. sec. 412c n., la Asamblea Legislativa derogó la Ley Núm. 282 de 15 de mayo de 1945, la cual reguló la profesión farmacéutica hasta el 2004.

 Además, la Asamblea Legislativa delegó a la Junta de Farmacia de Puerto Rico la facultad de adoptar las reglas y los reglamentos necesarios para la aplicación de la Ley de Farmacia de Puerto Rico en conformidad con la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico. 20 L.P.R.A. see. 408a(v). No obstante, se deduce del referido estatuto que este poder de reglamenta-ción se refiere específicamente a la práctica de la profesión farmacéutica y a la ocupación de técnico de farmacia.

 Por otro lado, la Ley de Sustancias Controladas de Puerto Rico también faculta al Secretario de Salud a fiscalizar la venta y distribución de sustancias con-troladas en farmacias y cualquier establecimiento en donde se manufacturen, sumi-nistren y distribuyan tales sustancias. 24 L.P.R.A. see. 2511. Además, dicho estatuto dispone que el Administrador de la Administración de Servicios de Salud Mental y Contra la Adicción puede delegar a los inspectores de sustancias controladas la fa-cultad de investigar toda violación criminal o administrativa a la mencionada ley que esté relacionada con la fabricación, distribución, dispensación y entrega de cual-quier sustancia controlada en la Clasificación I. 24 L.P.R.A. sec. 2511a.

 A pesar de que el citado Reglamento para la Operación de Establecimientos Dedicados a la Manufactura, Producción, Venta y Distribución de Drogas y Produc-tos Farmacéuticos, Reglamento Núm. 91 del Secretario de Salud de 6 de noviembre de 1998 (Reglamento Núm. 91) se aprobó al amparo de la Ley Núm. 282, supra —la cual fue derogada por la Ley de Farmacia de Puerto Rico de 2004— dicho reglamento se ajusta enteramente al andamiaje administrativo creado por la referida Ley de Farmacia, por lo que continúa aplicando con toda su fuerza y vigor. 20 L.P.R.A. sec. 412b; Pueblo v. Marrero, 69 D.P.R. 363 (1948).

 Véase el Reglamento para Regular los Procedimientos Adjudicativos en el Departamento de Salud y sus Dependencias, Reglamento Núm. 85 del Secretario de Salud promulgado el 27 de agosto de 1996.

 Para determinar si el poder jurisdiccional invocado por la agencia para regular una conducta específica es cónsono con los poderes delegados por el lenguaje amplio de una ley orgánica, se debe examinar la relación entre dicha conducta, sus efectos y las responsabilidades de la agencia según se definen en el estatuto. Véase R.J. Pierce, Administrative Law Treatise, 4ta ed., Nueva York, Aspen Law and Business, 2002, Vol. II, Sec. 14.2, pág. 935.

 Según el referido reglamento de DACo, los requisitos para permitir la venta de productos con fecha de expiración vencida son los siguientes: (i) si se colocan en un lugar especial, rotulado en español de manera conspicua y claramente legible, para productos con fecha de expiración vencida; (ii) si se le explica al consumidor los riesgos de adquirir tal producto, y (iii) si se obtiene el consentimiento inteligente y expreso del consumidor. Art. 6 del Reglamento de Calidad y Seguridad, Productos de Uso y Consumo, Reglamento Núm. 3667, 13 de octubre de 1998.