Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| JORGE REYES TSINKELIS<br><br>Recurrente<br><br>V.<br><br>GARAJE ISLA VERDE, LLC, MERCEDES BENZ FINANCIAL SERVICES USA LLC. MAPFRE PRAICO INSURANCE, CO.<br><br>Recurridos | KLRA202500089 | *Revisión de Decisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: SAN-2019-0006079<br><br>Sobre: Compra Venta de Vehículos de Motor |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 13 de junio de 2025.

El 10 de febrero de 2025, compareció ante este foro revisor el señor Jorge Reyes Tsinkelis (en adelante, señor Reyes Tsinkelis o parte recurrente) mediante *Recurso de Revisión*, en el que nos solicita la revisión de la *Resolución* emitida el 20 de septiembre de 2024 y notificada el día 23 de septiembre de 2024, por el Departamento de Asuntos al Consumidor (en adelante, el DACo). Mediante el referido dictamen, el ente administrativo declaró No Ha Lugar la *Querella* interpuesta por la parte recurrente y consecuentemente, ordenó el cierre y archivo de la misma.

Por los fundamentos que se exponen a continuación, se confirma la decisión recurrida.

### I

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Querella* presentada el 26 de diciembre de 2019, ante el DACo, por el señor Reyes Tsinkelis contra Garaje Isla Verde

Número Identificador

SEN2025 _____

LLC (en adelante, Garaje Isla Verde), Mercedes Benz Financial Services, LLC (en adelante MBFS) y MAPFRE PRAICO Insurance Co. (en adelante, MAPFRE y en conjunto, parte recurrida). En esencia, el señor Reyes Tsinkelis sostuvo que, mediante compraventa adquirió un vehículo de motor usado, en el Garaje Isla Verde como un *Certified Pre-Owned*, con garantía del manufacturero. Alegó que, el vehículo en cuestión le había estado dando problemas y que el *dealer* no le estaba honrando la garantía. Asimismo, acotó que, el vehículo tenía un problema con la transmisión que el *dealer* no había podido arreglar. A tales efectos, solicitó como remedio que se le otorgara un vehículo con "especificaciones iguales o mejor", devolución de todo el dinero que había pagado hasta el momento y un "*buyback*" o cancelación del préstamo.

En respuesta, MAPFRE presentó la *Contestación a Querella*. Sostuvo que, la *Querella* según redactada no exponía una reclamación que justificara la concesión de un remedio en contra de MAPFRE. Adujo que, en todo caso, el Garaje Isla Verde desconocía los alegados vicios ocultos del vehículo al momento de la compraventa celebrada el 22 de diciembre de 2018, por medio de la cual la parte peticionaria advino en titularidad del vehículo.

Por otro lado, Garaje Isla Verde presentó la *Contestación a Querella y Solicitud de Desestimación*. En primer lugar, acotó que, todos los reclamos alegados en la *Querella* estaban o podían estar cubiertos bajo la garantía del manufacturero. Sostuvo que, en la *Querella* no existía alegación alguna en contra de Garaje Isla Verde que demostrara y evidenciara el incumplimiento específico con el contrato de garantía aplicable a la unidad. De igual forma, es la posición de Garaje Isla Verde que, las hojas de servicio reflejaban que, se atendieron las quejas reportadas por la parte recurrida dentro de los términos aplicables de la garantía del manufacturero. Asimismo, expresó que, de ser cierto los señalamientos de la parte

recurrente, estos eran cónsonos con el tiempo y millaje de la unidad, y no ocasionaban riesgo a la seguridad, menoscabo o pérdida de valor. Aseguró que, la parte recurrente no había logrado demostrar que el Garaje Isla Verde hubiese denegado una reparación, servicio u obligación que surgiera de la Garantía del Manufacturero a la cual tuviera derecho de recibir. Además, sostuvo que no se configuraba el dolo contractual por estar ausentes los elementos de error, violencia, intimidación o vicio en el consentimiento, o maquinaciones insidiosas por parte de Garaje Isla Verde. Finalmente, solicitó que se desestimara la *Querella* o que se declarara No Ha Lugar.

De igual manera, MBFS presentó la *Contestación a la Querella y Moción de Desestimación*. De entrada, planteó que ninguna de las alegaciones hechas en la *Querella* fue dirigida a MBFS. Argumentó que, conforme a la Ley de Garantías de Vehículos de Motor y los Reglamentos 7159 y 7920 de DACo, MBFS no respondía por la garantía del vehículo objeto de la controversia. Sostuvo, además, que, no tenía nada que aportar a la controversia en cuanto a los alegados defectos del vehículo en cuestión, ni sobre el servicio o reparación bajo garantía que hubiere ofrecido Garaje Isla Verde. Por último, expresó que, procedía la desestimación de la *Querella* en cuanto a MBFS, por motivo de que esta no presentaba una reclamación que justificara la concesión de un remedio.

El 12 de agosto de 2020, fue llevada a cabo una inspección técnica del vehículo objeto de la controversia de epígrafe. A tales fines, el inspector del DACo emitió el *Informe de Inspección Vehículos de Motor*. En dicho informe, el inspector plasmó los resultados de la inspección, a saber:

**Hallazgos de la inspección según alegaciones de la querella:**

- Al llegar el guardia de seguridad me tomaron temperatura y aplicación de desinfectante de

manos según protocolo Covid 19. Al encontrarnos las partes y manteniendo distanciamiento realizamos inspección del vehículo. Le pregunt[é] al querellante si estaba de acuerdo con hacer la prueba de carretera con el supervisor del taller Manuel Polanco ya que no puedo hacer pruebas de carretera con todas las partes adentro y también la razón es que en caso de dañarse el auto el querellado llamaría una grúa. El querellante accedió y solicit[é] que desinfectaran la unidad por adentro. Salimos hacer la prueba de carretera pasando por vías rápidas con curvas y pendientes y el querellado manej[ó] el auto realizando provocaciones en el vehículo para ver si mostraba algún problema o condición relacionado a las quejas de la querella. El auto desplaz[ó], aplic[ó] y se comportó bien. El panel de instrumentación no mostr[ó] luces de advertencias por averías mecánicas tampoco. Al llegar el querellante solicit[ó] una evaluación electrónica "DTC" y no mostr[ó] códigos como lo muestra la evaluación.

El inspector, en su opinión pericial determinó que, al momento de la inspección, el vehículo mostró un rendimiento de vida útil para su uso y disfrute.

Posteriormente, Garaje Isla Verde presentó la *Solicitud de Desestimación Sumaria por Contenido del Informe de Inspección.* Debido a que el informe no contuvo ningún hallazgo en contra de Garaje Isla Vede, este último solicitó que se desestimara la *Querella.*

Más adelante, la parte recurrente presentó la *Enmienda a Querella,* con el propósito de incluir a Mercedes Benz USA, CT Corporation System (en adelante, MBUSA).

Por su parte, MAPFRE presentó la *Contestaci[ó]n a Querella Enmendada.* Reiteró que, la parte recurrente no había presentado evidencia que sustentara las alegaciones de la *Querella,* así como que esta no exponía una reclamación que justificara la concesión de un remedio.

El 20 de febrero de 2022, el DACo emitió *Resolución Interlocutoria.* En virtud de esta, declaró No Ha Lugar las mociones de desestimación presentadas por MBFS y por Garaje Isla Verde.

Luego, MBFS presentó la *Contestación a Querella Enmendada.* Alegó que, la parte recurrente no había demostrado que se le

hubiera denegado servicio alguno y que por ello, la *Querella* era académica. Sostuvo, además, que, la parte recurrente no había demostrado conduta de MBFS que pudiera ser considerada dolosa, culposa o negligente. Solicitó que se declarara No Ha Lugar la *Querella Enmendada.*

Transcurridos varios trámites procesales, innecesarios pormenorizar, el 9 de noviembre de 2023, el DACo celebró Vista Administrativa.

Así las cosas, el 20 de septiembre de 2024, notificada el 23 de septiembre de 2024, DACo emitió la *Resolución* recurrida. Por medio de su dictamen, la agencia administrativa consignó las siguientes determinaciones de hechos:

1. El 22 de diciembre de 2018, el Sr. Jorge Luis Reyes Tsinkelis, en adelante la parte querellante, adquirió mediante compraventa de parte de Garaje Isla Verde, LLC, en adelante Garaje Isla Verde, un vehículo de motor usado, marca Mercedes-Benz, modelo E350W, del año 2016 tablilla número IAJ-442, número de serie o identificación WDDHF5KB2GB244685. A la fecha de la compraventa el vehículo antes descrito tenía 28,575 millas recorridas.

2. El precio de venta al contado del vehículo objeto de esta querella fue [de] $35,995.00. A dicho precio, la parte querellante le añadió los siguientes accesorios: 2CPO BM EEXT WARRANTY 24 MONTH ($3,995.00); F ($995.00) FIRST CLASS; 3BASIC MAINT 3 YEARS ($1,630.00); DENT REMOVAL ($995.00) ADQUISITION FEE ($599.00); IVU TOTAL ($114.43); TABLILLAS ($337.50) PRECIO TOTAL $44,660.93.

3. Al momento de la copra del vehículo objeto de esta querella, la parte querellante hizo un pronto pago de $4,936.50 y financió el remanente del precio mediante un contrato de compraventa al por menor a plazos con Mercedes Benz Financial Services, USA, LLC[.]

4. Al vehículo objeto de esta querella le fue otorgada por el manufacturero una garantía de cuatro años 0 $60,000 millas, lo primero que ocurra. Dicha garantía entró en vigor en la fecha de la primera compraventa, el 24 de noviembre de 2015.

5. A tenor con la Regla 26.2 del Reglamento Núm. 7159 de 1 junio de 2006, según enmendado, conocido como Reglamento de Garantías de

Vehículos de Motor al vehículo objeto de esta querella tener 28,575 millas recorridas, el vendedor venía obligado a extenderle una garantía de en piezas y mano de obra de cuatro (4) meses o cuatro mil (4,000) millas, lo primero que ocurriese, señalada en la primera determinación de hecho contado a partir de fecha de compraventa.

6. Las disposiciones de la Ley Orgánica nos permiten aplicar los principios y disposiciones del Código Civil y otras leyes especiales que gobiernen la forma concreta de los hechos de cada caso. Al momento de los hechos (julio 2020) que provocan la controversia de la presente querella, estaba vigente el Código Civil de 1930, por lo que se atenderá bajo sus disposiciones.

7. MAPRE PRAICO Insurance Company emitió la fianza número 1302108000172 de licencia y permiso a nombre y beneficio de Garaje Isla Verde, mediante la cual MAPRE PRAICO Insurance Company advino fiadora según los términos del contrato de fianza según requerido por el Artículo VIII (A) del Reglamento Núm. 6274, del 2 de enero de 2001.

8. El 19 de enero de 2019, la parte querellante llevó el vehículo objeto de esta querella al taller de la parte querellada para aplicarle el "First Class Protection".

9. La parte querellante también reclamó que la bocina trasera suena distorsionada. La parte querellante también reclamó que la bocina trasera suena distorsionada. La parte querellante también reclamó que la bocina trasera suena distorsionada. La parte querellante también reclamó que la bocina trasera suena distorsionada. para que se le aplicara el "First Class Protection". [sic.]

10. El 8 de abril de 2019, la parte querellante fue al taller de la parte querellada para solicitar la entrega de una llave y "beeper" que se le debía desde la venta. Se ordenó la llave, la parte querellante también reclamó que la bocina trasera suena distorsionada. Se ordenó el "sound System amplifier" y se verificaron las bocinas.

11. El 11 de abril de 2019, la parte querellante, reclamando la reparación de un aviso de "batería en amarillo". [Q]uerellante llevó el vehículo objeto de esta querella al taller de Garaje Isla Verde. Allí se verificó la batería y funcionaba bien. Se revisaron los terminales y el negativo requirió ajuste. Tras el ajuste todo bien. La parte querellante también reclamó que la bocina trasera suena distorsionada. Tras la evaluación correspondiente se reemplazó el amplificador de sonido, ajuste de programación y se corrigió el desperfecto. Se reclamó que en ocasiones el "handle" de la puerta del conductor se queda

abierto. Se confirmó la situación y se ordenó el "Handle" de reemplazo. La parte querellante también solicitó que se le entregara una llave y "beeper" que se le debía desde la venta. Se le entregó lo solicitado.

12. El 10 de junio de 2019, la parte querellante llevó el vehículo objeto de esta querella al taller de la parte querellada indicando que el "handle" de la puerta delantera, lado conductor se queda abierta. Se confirmó la condición. Se reemplazó el "handle" y el "bracket", así como el regulador y la grúa y se corrigió la situación.

13. El 2 de agosto de 2019 la parte querellante llevó el vehículo objeto de esta querella al taller de la parte querellada para reparación en garantía. Reclamó que se siente vibración dentro [de] la cabina al estar el vehículo detenido o en "parking" Se encontró puntos de motor y transmisión bajitos, se reemplazaron y todo quedó según especificaciones. La parte querellante también reclamó que se siente sonido raro por el área de motor como sonidos de metal dando cantacitos pequeños. No se replicó condición. Se reclamó que la transmisión da un halón de tercera a cuarta. No se replicó la condición.

14. El 23 de agosto de 2019, la parte querellante llevó el vehículo objeto de esta querella al taller de la parte querellada para estimado y reparación de una colisión sufrida por el vehículo objeto de esta querella en la parte delantera. El estimado total de [la reparación], incluyendo piezas y mano de obra fue de $13,739.45.

15. El 10 de octubre de 2019, la parte querellante llevó el vehículo objeto de esta querella al taller de la parte querellada alegando que el foco delantero derecho no funciona. Se reprogramaron ambos focos.

16. El 21 de noviembre de 2019, la parte querellante indica que la alerta de los "blind spot" en los retrovisores en una ocasión prenden y apagan. Se verificó y se encontró dentro de especificaciones del manufacturero. En ocasiones la transmisión, al aplicar los cambios de segunda a tercera y de tercera a cuarte se siente un golpe fuerte. No se replicó la condición.

17. El 26 de diciembre de 2019 se presentó la querella de epígrafe ante este Departamento exponiendo y alegando la parte querellante lo siguiente:

    a. Desde que compré el carro me ha estado dando problemas extraños y siento que el dealer no está honrando la garantía. Entre ellos problemas eléctricos extraños. También tiene un problema con la transmisión que no han podido arreglar. El carro fue comprado como

'Certified Pre-Owned' con la garantía del manufacturero. Solo quisiera saber que recursos tengo. Si necesitas más detalles los puedo dar, pero tengo bastante seguridad que este carro se puede considerar para un "buyback".

b. Remedio Solicitado Por el Querellante:
Vehículo con especificaciones iguales o mejor. Devolución de todo el dinero que he pagado hasta el momento y un "buyback"[.] Cancelación del préstamo y/o lo que en derecho proceda.

18. El 1 de septiembre de 2021, a parte querellante, por conducto de su representante legal, presentó una enmienda a la querella para incluir a Mercedes Benz USA CT Corporation Systems con dirección 361 San Francisco St. Penthouse Old San Juan, PR 00901.

19. Tras varios trámites procesales el 25 de marzo de 2020 un técnico de este Departamento realizó una inspección del vehículo objeto de esta querella. [P]osteriormente rindió un informe sobre la misma que le fue notificada a las partes en la querella. Del informe se desprende lo siguiente:

**Resultados de la Inspección:**
Hallazgos de la inspección según alegaciones de la querella:
Al llegar el guardia de seguridad me tomaron temperatura y aplicación de desinfectante de manos según protocolo Covid 19. Al encontrarnos las partes y manteniendo distanciamiento realizamos inspección del vehículo. Le pregunt[é] al querellante si estaba de acuerdo con hacer la prueba de carretera con el supervisor del taller Manuel Polanco ya que no puedo hacer pruebas de carreteras con todas las partes adentro y también la razón es que en caso de dañarse el auto el querellado llamaría una grúa. El querellante accedió y solicit[é] que desinfectara la unidad por adentro. Salimos hacer la prueba de carretera pasando por vías rápidas con curvas y pendientes y el querellado manej[ó] el auto realizando provocaciones en el vehículo para ver si mostraba algún problema o condición relacionado a las quejas de la querella. El auto desplaz[ó], aplic[ó] y se comportó bien. El panel de instrumentación no mostr[ó] luces de advertencias por averías mecánicas tampoco. Al llegar el querellante solicitó una evaluación electrónica "DTC" y no mostró códigos como lo muestra la evaluación.

OPINIÓN PERICIAL
Al momento de la inspección el auto mostr[ó] un rendimiento de vida útil para su uso y disfrute.

20. A la inspección descrita en el párrafo precedente, la co-querellada MAPFRE-PRAICO Insurance

Company no compareció, pues no era parte de la querella a esa fecha por lo que se citó a todas las partes a una segunda inspección que fue celebrada el 12 de agosto de 2020. Tras la inspección, el técnico rindió un informe que fue notificado a las partes y del cual se desprende lo siguiente:

**RESULTADOS DE LA INSPECCIÓN**
Hallazgos de la inspección según alegaciones de la querella:
El vehículo estaba en poder del querellante con marbete vigente para la prueba de carretera. Solicit[é] probar el auto en carretera donde recorrimos zonas urbanas y vías rápidas con curvas y pendientes sin presentar problemas en el tren propulsor. El único asunto que este si mostr[ó] de inmediato que nos [h]a[bía]mos montado al auto era un mensaje en el panel de instrumentación que decía de una deficiencia en el sistema (Collision Prevention Assist) Solicit[é] una evaluación (D.T.C. Diagnostic Trouble Code) y mostr[ó] los siguientes códigos.

OPINIÓN PERICIAL
Entrevist[é] al Supervisor del taller si el vehículo tiene algún "RECALL" relacionado al aviso que surgió en la pantalla y me dejó saber que no.

OBSERVACIONES
En ocasiones el querellante mientras hacíamos la prueba de carretera se me quejó de unos supuestos cantazos en la transmisión automática en la cual los encontré bien suaves y normales. Exhort[é] y orient[é] al querellante a leer el manual del usuario ya que el vehículo posee unas prestaciones de transmisión inteligente y adaptativa.

El DACo determinó que, de acuerdo a la prueba desfilada, no se demostró que los defectos reclamados por la parte recurrente fuesen defectos mayores que imposibilitaran el uso de la cosa adquirida. Concluyó que, no se cumplieron todos los requisitos para que procediera la acción redhibitoria. Asimismo, razonó que, tampoco se configuraban todos los criterios dispuestos por la ley para la resolución de los contratos por causa de vicios ocultos. Consecuentemente, declaró No Ha Lugar la querella presentada por la parte recurrente.

En desacuerdo, el 15 de octubre de 2024, la parte recurrente presentó *Moción en Solicitud de Reconsideración.*

Al próximo día, notificada el 17 de octubre de 2024, el DACo, emitió *Orden,* mediante la cual, concedió un término a la parte recurrida para que se expresara en torno a esta.

En cumplimiento, el 25 de octubre de 2025, MBUSA y MBFS, presentaron ante el DACo, *Oposición a Moción de Reconsideración.*

Luego, el 31 de octubre de 2024, el Garaje Isla Verde, compareció mediante *Oposición a Solicitud de Reconsideración.*

Por motivo de que el DACo no emitió una decisión en reconsideración dentro de los noventa (90) días de que la parte recurrente presentó su moción de reconsideración, la parte recurrente presentó el recurso cuya revisión nos ocupa. En dicho recurso esgrimió los siguientes señalamientos de error:

> PRIMER ERROR: Erró el DACo en la aplicación del estándar de vicios ocultos o redhibitorios; ya que la resolución recurrida subestimó de manera sustancial el efecto acumulativo y la gravedad de los defectos presentados en el vehículo, adoptando una visión fragmentaria en lugar de integrar de forma global el conjunto probatorio del expediente administrativo que evidencia la existencia de fallas reiteradas y sistemáticas que afectan la utilización normal y el valor del automóvil.
>
> SEGUNDO ERROR: Erró el DACo en la valoración y consideración del dolo y la publicidad engañosa en su resolución al no analizar de manera profunda las alegaciones de que el vehículo fue vendido bajo falsas representaciones, específicamente el etiquetado de "certified pre-owned" sin cumplir los requisitos necesarios. Esto vulnera el principio del consentimiento libre e informado, pues el comprador se vio inducido a contratar basándose en información engañosa.
>
> TERCER ERROR: Erró el DACo al excluir evidencia nueva y relevante, en particular el incidente del 8 de octubre de 2024, donde incurrió en un error en el procedimiento que vulnera los principios del debido proceso y la obligación de valorar de manera integral toda la prueba sustancial del expediente.
>
> CUARTO ERROR: Erró el DACo cuando emitió una resolución que no toma en consideración todos los hechos que obran del expediente administrativo.

En atención al aludido recurso, el 21 de febrero de 2025 emitimos *Resolución* mediante la cual le ordenamos a la parte recurrente que acreditara en o antes del miércoles 26 de febrero de

2025, haber notificado copia del presente recurso a las partes y a la agencia recurrida, según lo dispone la Regla 58 (B) de nuestro Reglamento[1]. Le apercibimos que, el incumplimiento con lo ordenado, daría lugar a la desestimación del recurso.

De otra parte, en esa misma *Resolución*, en cuanto a la *Moción en Solicitud de Término para Someter Transcripción de Prueba Oral y Alegato Suplementario* incoada por la parte recurrente el 10 de febrero de 2025, le concedimos a esta, el término de treinta (30) días contado a partir de la entrega de la regrabación de los procedimientos para presentar la transcripción de la prueba ante este Tribunal y tendrá treinta (30) días, a partir de la presentación de la transcripción, para presentar su alegato suplementario en el cual, debería hacer referencia específica a las porciones de la transcripción de la prueba oral que sean relevantes a sus señalamientos de error.

A su vez, le concedimos a la parte recurrida, el término de veinte (20) días para presentar sus objeciones a la transcripción de la prueba oral contado desde que ésta sea presentada ante este Tribunal.  Apercibimos a la parte recurrida que transcurrido el referido término sin que se hubiese objetado la transcripción, acogeríamos la misma como estipulada por las partes.

Asimismo, le concedimos a la parte recurrida treinta (30) días, a contarse desde que se acogiera la transcripción presentada o desde la presentación del alegato suplementario de la parte recurrente, para presentar su alegato en oposición al recurso.  En el mismo, debía hacer referencia a las porciones de la transcripción de la prueba oral que sean relevantes a su contención.  Dispusimos que, de no presentarse la transcripción ordenada, el término dispuesto para presentar el alegato en oposición se contaría a partir

---

[1] 4 LPRA Ap. XXII-B, R. 58(B).

del día en que se debió haber presentado la misma. Advertimos que, de no comparecer en dicho término, el caso se entenderá perfeccionado para su adjudicación final.

De otra parte, le ordenamos al Departamento de Asuntos del Consumidor que sometiera copia certificada del expediente de referencia SAN-2019-0006079.

El 26 de febrero de 2025 compareció ante este foro apelativo la parte querellante mediante *Moción en Cumplimiento de Orden*, en la cual nos acreditó haber notificado el recurso a la parte recurrida.

En igual fecha, compareció el DACo mediante *Moción en Cumplimiento de Orden* y nos sometió copia certificada del expediente administrativo relacionado a la Querella SAN-2019-0006079, objeto del recurso ante nuestra consideración.

El 27 de febrero de 2025, este Tribunal de Apelaciones emitió *Sentencia*, mediante la cual desestimó el recurso por falta de jurisdicción, al haber sido presentado el mismo de forma prematura.

La parte recurrente presentó el 18 de marzo de 2025 presentó *Moción en Solicitud de Reconsideración*, la cual fue declarada Con Lugar y consecuentemente se dejó sin efecto la Sentencia emitida el 27 de febrero de 2025. A su vez, se le concedió término a la parte recurrente para que presentara la Transcripción de la Prueba Oral estipulada por las partes.

En cumplimiento con los ordenado la parte recurrente presentó el 21 de abril de 2025, *Moción en Cumplimiento de Orden*, en la cual sometió la Transcripción de la Prueba Oral estipulada por las partes.

El 23 de abril de 2025, este Tribunal emitió *Resolución*, concediendo término a la parte recurrente hasta el 12 de mayo de 2025 para que sometiera su alegato suplementario. A su vez, en la misma le concedió término a la parte recurrida hasta el 11 de junio de 2025 para que presentara su alegato en oposición.

El 12 de mayo de 2025, la parte recurrente presentó su *Alegato Suplementario*.

Por su parte, el 27 de mayo de 2025 MBUSA, presentó su *Alegato en Oposición al Recurso de Revisión* y el 3 de junio de 2025 Garaje Isla Verde presentó su *Alegato en Oposición a Petición de Revisión*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. *Estándar de Revisión Judicial de Determinaciones Administrativas*

De ordinario los tribunales apelativos debemos otorgar deferencia y respeto a las conclusiones e interpretaciones hechas por las agencias administrativas.[2] *Vázquez v. Consejo de Titulares*, 2025 TSPR 56 (2025); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019). No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. De igual manera, la más Alta Curia ha expresado que, la consideración otorgada por los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, supra.

En *Torres Rivera v. Policía de Puerto Rico*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está

---

[2] *Rolón Martínez v. Supte. Policía*, 201 DPR 26,35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).

basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.[3]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se debe dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820.[4]

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

---

[3] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.
[4] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Las determinaciones de hechos contenidas en las decisiones de las agencias, *podrán* ser sostenidas por el tribunal cuando estén basadas en evidencia sustancial que obra en el expediente administrativo. Mientras que, conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675; *Vázquez v. Consejo de Titulares*, supra; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820.

Los foros revisores podrán apoyarse en las interpretaciones de las agencias. Sin embargo, dichas interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" y no avalar irreflexivamente, como se hacía en el pasado. *Vázquez v. Consejo de Titulares*, supra. en casos administrativos el tribunal deberá realizar su tarea con un "*body of experience and informed judgment*" de la agencia, entre otra información a su disposición. *Íd.* De igual manera, los tribunales deberán ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Íd.*

## B. *Facultades del Departamento de Asuntos del Consumidor*

El Departamento de Asuntos del Consumidor fue creado mediante la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de asuntos del Consumidor*, 3 LPRA sec. 341. Este fue creado con el propósito primordial de vindicar e implementar los derechos del consumidor. Art. 3 de la Ley Núm. 5 de 23 de abril de 1973, *supra,* 3 LPRA sec. 341b; *Martínez v. DACo*, 163 DPR 594, 600 (2004); *DACo v. Fcia. San Martin*, 175 DPR 198, 204 (2009). Esta ley, le impone al Secretario de DACo, "el deber ministerial de promover y velar por el cumplimiento *de todas* las leyes, las reglas, los reglamentos y las

órdenes que afecten los intereses del consumidor. *Íd.* págs. 204-205. (Citas omitidas).

En sintonía con lo anterior, la referida ley le concede al Secretario del DACo varios poderes y facultades, entre estos se encuentra el atender, investigar y resolver las queja y querellas que los consumidores presenten y servicios adquiridos o recibidos por parte del sector privado de la economía. Art. 6(c) de la Ley Núm. 5 de 23 de abril de 1973, *supra*, 3 LPRA sec. 3418(e). Además, cuenta con la facultad de "poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a Derecho". Art. 6(d) de la Ley Núm. 5 de 23 de abril de 1973, *supra*, 3 LPRA sec. 3418(e).

Conforme a los poderes delegados, el DACo aprobó el Reglamento de Procedimientos Adjudicativos del DACo, Reglamento 8034 del 14 de junio de 2021. Lo anterior, con el fin de asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el DACo y así promover un procedimiento uniforme para su adjudicación. Regla 1 del Reglamento 8034, *supra*. El referido reglamento aplica a las investigaciones y a los procedimientos administrativos sobre querellas iniciadas por los consumidores o por el DACo. Regla 3 del Reglamento 8034, *supra*. En lo pertinente, la Regla 4 del aludido reglamento define *consumidor* como "toda persona natural, que adquiere o utiliza productos o servicios como destinatario final. Incluye toda otra persona, asociación o entidad que por designación de ley está facultado para presentar su reclamación en el Departamento. Regla 4(f) del Reglamento 8034, *supra*.

Por otro lado, con el fin de garantizar la seguridad, salud y bienestar de la comunidad para evitar que vehículos de motor defectuosos, de gran potencialidad de daño al conductor y otros, transiten por las vías públicas del país, fue creada la Ley de Garantías de Vehículos de Motor, Ley 7 de 24 de septiembre de 1979, según enmendada. *Exposición de Motivos* de la Ley 7 de 24 de septiembre de 1979, *supra.* Mediante este estatuto, se le delegó al DACo la tarea de proteger a los consumidores de vehículos de motor frente a los intereses del vendedor, distribuidor y manufacturero. *Ortiz Rolón v. Soler Auto Sales et al.*, 202 DPR 689, 697 (2019); *Exposición de Motivos* de la Ley 7 de 24 de septiembre de 1979, *supra.* La Ley 7 de 24 de septiembre de 1979, *supra,* además tiene como propósito proteger al consumidor de vehículos de motor nuevos y usados en Puerto Rico, asegurándole que los vehículos de motor que adquiera cuenten con la misma garantía de fábrica que el fabricante o manufacturero les otorga a esos vehículos en el país donde se manufacturen, independientemente del lugar donde y de quien el consumidor haya adquirido tal vehículo. 10 LPRA sec. 2053. Así, le impone al fabricante o manufacturero de vehículos de motor la responsabilidad de honrar las garantías de fábrica de estos vehículos, y al distribuidor o vendedor la obligación de brindar al consumidor el servicio de garantía de fábrica en Puerto Rico. 10 LPRA sec. 2057. La Ley 7 de 24 de septiembre de 1979, *supra,* dispone que, el fabricante o manufacturero será responsable por aquellos daños que causen los defectos de fabricación, diseño, ensamble o manufactura de los vehículos de motor por él, fabricados o manufacturados. 10 LPRA sec. 2060.

En virtud de este estatuto, el DACo adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento 7159 del 6 de junio de 2006. *Ortiz Rolón v. Soler Auto Sales et al,* supra, pág. 697. Mediante este, el DACo buscó prevenir las prácticas ilícitas en las

ventas de vehículos de motor, y así proteger a los consumidores al exigir que estos sean seguros y sirvan para los propósitos por los cuales fueron adquiridos. *Íd.*; Véase la Regla 2 del Reglamento 7159, *supra.* Según la Regla 4 del Reglamento 7159, *supra*, este deberá ser interpretado liberalmente a favor del consumidor.

La Regla 26 del Reglamento 7159, *supra*, dispone una prohibición de venta sobre los vehículos de motor usados sin garantía. Asimismo, exige que todo vendedor de vehículos de motor usados, conceda garantía en piezas y mano de obra basada en el millaje recorrido y en una escala específica. Regla 26.2 del Reglamento 7159, *supra*. El comprador también tendrá derecho a que el vehículo sea inspeccionado por un mecánico de su preferencia, antes de comprar el vehículo usado. Regla 26.3 del Reglamento 7159, *supra*.

Por otro lado, el aludido Reglamento expone que, en aquellas situaciones en las que envuelven riesgos inminentes a la seguridad de los ocupantes del vehículo, deberá ser recibido para reparación al momento en que el consumidor lo solicite, durante horas laborables. Regla 29.1 del Reglamento 7159, *supra*.

Por otro lado, la Regla 29.3 del Reglamento 7159, *supra*, plantea lo siguiente:

> El Departamento, podrá a opción del consumidor, decretar la resolución del contrato o reducir proporcionalmente su precio de venta de acuerdo a las disposiciones del Código Civil de Puerto Rico en aquellos casos en que el vendedor o su representante, dentro de los términos de la garantía, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable de reparar se determinará tomando en consideración las circunstancias particulares de cada caso.

## C. *Teoría General de los Contratos*

Es normativa reiterada que, las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos ilícitos, u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo

para producirlas.[5]  Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992; *Universal Ins. v. Popular Auto*, 207 DPR 228, 238 (2021); *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021).  Los contratos son negocios jurídicos bilaterales y en nuestro ordenamiento, constituyen una de las varias formas en que las personas pueden obligarse entre sí.  *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000).  Los contratos se perfeccionan cuando median el objeto, consentimiento y causa.  Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391; *Pérez Rodríguez v. López Rodríguez et at.*, 210 DPR 163, 186 (2022).  El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio.  Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Pérez Rodríguez v. López Rodríguez et at.*, supra, pág. 186; *Aponte Valentín et al. v. Pfizer Pharm*, 208 DPR 263 (2021).  En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes.  *Pérez Rodríguez v. López Rodríguez et at.*, supra, pág. 187; *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994).  No obstante, tal libertad no es infinita, puesto que, encuentra su límite en el Art. 1207 del Código Civil, 31 LPRA ant. sec. 3372.  El referido artículo dispone que, los términos y condiciones que las partes establezcan serán válidas cuando no sean contrarias a la ley, la moral, ni al orden público.  *Íd.*; *Burgos López et al. v. Condado Plaza*, supra, págs. 7-8; *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014).  Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento

---

[5] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, la presentación de la *Demanda* y los hechos que dan base a esta tuvieron lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado.

de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375; *Aponte Valentín v. Pfizer Pharms.,* supra; *Burgos López et al. v. Condado Plaza,* supra, pág. 8. Los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR,* 143 DPR 627 (1997).

Ahora bien, en lo aquí pertinente, el derogado Código Civil define el contrato de compraventa como mediante el cual uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente. Art. 1334 del Código Civil, 31 LPRA ant. sec. 3741. El antiguo Código Civil, también dispone las obligaciones del vendedor. En primer lugar, el vendedor se encuentra obligado a la entrega y saneamiento de la cosa objeto de la venta.[6]

En lo que respecta a la acción de saneamiento por vicios ocultos, entre las obligaciones que le impone nuestro Código Civil a un vendedor, se encuentra su responsabilidad ante los vicios o defectos ocultos que tuviere la cosa vendida. Esta obligación se denomina *saneamiento por vicios o defectos ocultos. García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 889 (2008). Este deber de saneamiento, que complementa el deber de la entrega, garantiza al comprador que el vendedor responderá de la posesión legal y pacífica de la cosa comprada y de los vicios o defectos ocultos que tuviere.[7] *Polanco v. Cacique Motors,* 165 DPR 156, 165 (2005).

En cuanto al saneamiento por defectos o gravámenes ocultos, el Código Civil dispone que:

---

[6] Art. 1350 del Código Civil, 31 LPRA ant. sec. 3801.
[7] Art. 1363 del Código Civil, 31 LPRA ant. sec. 3831.

> El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina o si disminuyen de tal modo este uso que, de haberlos conocido el comprador, no la habría adquirido o habría dado menos precio por ella; pero no será responsable de los defecto manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos.[8]

La acción debe ejercitarse dentro del plazo legal de seis meses contados desde la entrega de la cosa vendida.[9] Nuestro más Alto Foro ha resuelto que dicho plazo comienza a transcurrir no desde la fecha de perfección del contrato, sino desde el momento en que cesan las gestiones de inteligencia entre las partes. (Citas omitidas). *Polanco v. Cacique Motors*, supra, pág. 166.

El Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> En casos de saneamiento por vicios ocultos, el Código Civil dispone que el comprador puede optar entre desistir del contrato, abonándose los gastos pagados o reducir el precio en una cantidad proporcional, a juicio de peritos. Art. 1375 del Código Civil, 31 LPRA sec. 3843. La primera opción, denominada *acción redhibitoria*, representa la restitución *in integrum,* ya que coloca a las partes en la misma condición en la que se hallaban antes de la compraventa. La segunda, conocida como acción *quanti minoris,* conlleva la restitución del precio percibido en proporción a la pérdida de valor en la cosa, a consecuencia del defecto. Q.M. Scaevola, *Código Civil,* Tomo XXIII, Reus S.A., Madrid, 1970, págs. 196-197. Por último, dispone el Código que en caso de que el vendedor conociera del defecto oculto y no lo comunicara al comprador, el último tendrá derecho también a reclamar en concepto de daños y perjuicios. Art. 1375 del Código Civil, *supra.* *Polanco v. Cacique Motors*, supra, págs. 166-167.

Para establecer qué son vicios redhibitorios, el Tribunal Supremo de Puerto Rico ha adoptado el criterio de "aquellos defectos que exceden de las imperfecciones menores que cabe esperar normalmente en un producto determinado, no siendo necesario que dichos defectos imposibiliten el uso de la cosa vendida, siempre que

---

[8] Art. 1373 del Código Civil, 31 LPRA ant. sec. 3841.
[9] Art. 1379 del Código Civil, 31 LPRA ant. sec. 3847.

mermen notablemente su valor". (Citas omitidas). *García Reyes v. Cruz Auto Corp.*, supra, 891.

Sobre este particular, nuestro más Alto Foro ha reiterado el criterio generalmente aceptado por la doctrina de que, *la apreciación de la importancia del defecto, a los fines de resolver la procedencia de la acción redhibitoria, es esencialmente una cuestión de hecho, justificándose, por lo tanto, nuestra intervención con la discreción del juzgador, sólo en aquellos casos que acusen ausencia de prueba adecuada o comisión de error manifiesto en su apreciación.* (Citas omitidas). *Íd.*

Esbozada la norma jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla al recurso ante nos.

**III**

En su primer señalamiento de error, la parte recurrente sostiene que la agencia recurrida incidió en la aplicación del estándar de vicios ocultos o redhibitorios, debido a que la resolución recurrida subestimó el efecto acumulativo y la gravedad de los defectos presentados en el vehículo. Y al adoptar una visión fragmentaria, en lugar de integrar de forma global el conjunto probatorio del expediente administrativo que evidencia la existencia de fallas reiteradas y sistemáticas que afectan la utilización normal y el valor del automóvil.

Como segundo señalamiento de error, la parte recurrente arguye que, el DACo incurrió en error en la valoración y consideración del dolo y la publicidad engañosa en su resolución, al no analizar de manera profunda las alegaciones de que el vehículo fue vendido bajo falsas representaciones, en particular, el etiquetado de *certified pre-owned*, sin cumplir los requisitos necesarios. Lo anterior, a su juicio, vulnera el principio del consentimiento libre e informado, debido a que se vio inducido a contratar basado en información engañosa.

En el tercer señalamiento de error, la parte recurrente aduce que, el DACo se equivocó al excluir evidencia nueva y relevante, en particular, un incidente ocurrido el 8 de octubre de 2024. Al vulnerar los principios del debido proceso y la obligación de valorar de manera integral toda la prueba sustancial del expediente.

Finalmente, como cuarto señalamiento de error, la parte recurrente argumenta que, el DACo incidió al emitir una resolución que no considera todos los hechos que obran del expediente administrativo.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error de forma conjunta.

Adelantamos que, no le asiste la razón. Veamos.

Según reseñáramos, en diciembre de 2018, el señor Reyes Tsinkelinis adquirió mediante compraventa un vehículo de motor usado en Garaje Isla Verde. El 19 de enero de 2019, la parte recurrente llevó su vehículo al *dealer* con el propósito de aplicarle el *First Class Protection*.[10] Entre sus reclamos, se encontraba el que la bocina trasera sonaba distorsionada.[11] Más adelante, volvió a llevar el vehículo al *dealer* y reclamó que la bocina trasera continuaba sonando distorsionada. A tales efectos, el *dealer* ordenó el *sound system aplifier* y verificó las bocinas.[12] Posteriormente, el 11 de abril de 2019, la parte recurrente llevó nuevamente su vehículo al *dealer* y explicó que, había aparecido un aviso de la batería. Revisaron la batería y sus terminales, y ajustaron uno de los terminales. Igualmente, reemplazaron el amplificador de sonido, ajustaron la programación y fue corregido el desperfecto de la bocina.[13] Para el 10 de junio de 2019, el señor Reyes Tsinkelinis se presentó al *dealer* con su vehículo debido a que enfrentaba problemas con el *handle*

---

[10] Véase determinación de hecho núm. 8.
[11] Véase determinación de hecho núm. 9.
[12] Véase determinación de hecho núm. 10.
[13] Véase determinación de hecho núm. 11.

de la puerta del conductor. En esa ocasión, le reemplazaron el *handle*, el *braket* y el regulador, logrando corregir la situación.[14]

Así las cosas, el 2 de agosto de 2019, la parte recurrente otra vez llevó el vehículo al *dealer*. Sostuvo que, sentía vibración dentro de la cabina cuando el vehículo se encontraba detenido. El *dealer* identificó problemas con los puntos de motor y transmisión, y los reemplazó.[15] El 10 de octubre de 2019, la aparte recurrente se presentó con su vehículo en el *dealer* y reclamó que el foco delantero derecho no funcionaba, por lo que el *dealer* reprogramó ambos focos.[16]

Respecto al saneamiento por defectos o gravámenes ocultos, el Código Civil dispone que:

> El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina o si disminuyen de tal modo este uso que, de haberlos conocido el comprador, no la habría adquirido o habría dado menos precio por ella; pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos.[17]

Nuestra más Alta Curia ha sido clara al determinar que, no son vicios redhibitorios los defectos que, no exceden de la medida de las imperfecciones menores que cabe esperar normalmente en un vehículo de motor. Igualmente, en las instancias en que se trate de reparaciones menores, el comprador se encuentra obligado a aceptarlas y por ende, la acción redhibitoria no procede.[18]

Todas las determinaciones de hechos realizadas por la agencia recurrida encuentran asilo en la prueba del expediente. Específicamente, en las hojas de servicio del *dealer* que detallan de forma específica que, la parte recurrida cumplió con las exigencias

---

[14] Véase determinación de hecho núm. 12.
[15] Véase determinación de hecho núm. 13.
[16] Véase determinación de hecho núm. 15.
[17] Art. 1373 del Código Civil, 31 LPRA ant. sec. 3841.
[18] Véase *Dominguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397 (1999).

de la Ley 7 de 24 de septiembre de 1979, según enmendada, así como con el Reglamento Núm. 7159, respecto a la garantía de vehículos de motor usados. En todo momento la parte recurrida actuó conforme a sus deberes y brindó el servicio necesario en un tiempo razonable para corregir los defectos que el vehículo pudiera presentar.

En el caso ante nuestra consideración, al evaluar la prueba presentada, colegimos que, como bien resolvió el DACo, la parte recurrente no logró demostrar que el vehículo tuviese defectos que imposibilitaran su uso y disfrute, ni que conllevaran un riesgo a la seguridad pública ni del conductor. Tampoco demostró que, el vehículo mostrara defectos que impactaran de forma negativa el valor del mismo. Igualmente, no procede la resolución del contrato entre las partes por vicios ocultos, en la medida en que, no estuvieron presentes los requisitos dispuestos por nuestro ordenamiento jurídico.

Al amparo de nuestra función revisora, de un minucioso examen del expediente, concluimos que, la determinación de la agencia recurrida estuvo sostenida por evidencia sustancial que obra en el mismo. De igual manera, al analizar las conclusiones de derecho realizadas por la agencia, somos del criterio que, esta actuó dentro del marco de sus facultades estatutarias.

**IV**

Por los fundamentos antes expuestos, se confirma la decisión recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones